## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

_____
                             :

SU YUN, individually and as       :
guardian of BORAH KIM, a minor  :
                             :

        Plaintiffs,        :

                             :    Civil Action No. 3:14-CV-2235
        v.             :
                             :

GREAT WOLF LODGE OF THE    :    (Judge Kosik)
POCONOS, LLC, JOHN DOES 1-10,  :
and ABC CORPS. 1-10         :
                             :

        Defendants.     :
_____

## MEMORANDUM

Before the Court is a motion for summary judgment filed by Defendant, Great Wolf

Lodge of the Poconos, LLC ("Great Wolf Lodge").  For the reasons which follow, the Court will

grant Great Wolf Lodge's motion.

## I. BACKGROUND

This action stems from an incident that occurred on June 4, 2013, when minor, Borah

Kim, then four years old, fell off a top bunk bed at Great Wolf Lodge, a hotel operated by

Defendant.  Borah, her parents, Su Hyon Yun and Kwang Ho Kim, and her younger sister, Leah

Kim, then two years old were visiting the hotel.  Upon check-in, Plaintiffs were offered a free

upgrade to the "wolf den" and accepted it.  (Doc. 28, Def.'s MSJ, Ex. C, Yun Dep., at 22:16-21.)

The "wolf den" included an adult bed, a pull-out sofa, and bunk beds; although, Plaintiffs claim

that they were not aware that the sofa served a dual purpose.  Ms. Yun claimed that she was

excited about the upgrade, and that Borah was excited to sleep on the top bunk bed.  (Id., Ex. C,

at 22:22-24; Ex. D, Kim Dep., at 35:21-22.)

After consideration of the possible dangers, Ms. Yun and Mr. Kim allowed Borah to sleep on the top bunk bed.  Mr. Kim stated, "since it's a bunk bed, it could be dangerous.  So we did think maybe she should sleep on the bottom bunk."  (Id., Ex. D, Kim Dep., at 59:16-24.) Ultimately though, Borah's parents felt it was not "that dangerous" to have Borah sleep on the top bunk.  (Id. at 60:1-21.)  Before the incident, Borah never slept in a bunk bed, and at home, Borah had rarely slept in a bed.  (Id., Ex. C, Yun Dep., at 24:5-7.)  At home, Borah slept on the floor, or in a bed with the side blocked off because of the possibility she might fall out of bed. (Id., Ex. D, Kim Dep., at 34:1-15, 35:10-18.)

At approximately 12:00 A.M., Mr. Kim stated that he heard a boom, and that he and his wife ran and saw that Borah fell out of the bunk bed.  (Doc. 28, Def.'s MSJ, Ex. D, Kim Dep., at 65:1-23.)  When Borah's parents found her, Borah was laying on the floor, which was carpeted. (Id. at 67:1-17.)  Borah vomited right away, and again at 2:00 A.M., 4:00 A.M., and 6:00 A.M. (Id., Ex. C, Yun Dep., at 42:8-21.)  Borah's parents then took her to the emergency room.  (Id.) As a result of the fall, Plaintiffs claim that Borah suffered a closed and nondisplaced skull fracture.  (Id., Ex. A, Compl., at ¶ 21.)

It is disputed whether a warning label was affixed to the bunk bed.  (Doc. 30, Def.'s Reply Br., at ¶ 4.)  Plaintiffs have provided deposition testimony of Ms. Yun and Mr. Kim, that say they did not see a warning.  Ms. Yun stated that she looked for a warning after Borah fell, but that she "didn't have the leisure or mindset to look for those things."  (Id., Ex. B, Yun Dep., at 39:7-14, 40:19-41:23.)  Mr. Kim said that he did not see any warning stickers and that after Borah fell out of the bed, he looked for warning stickers but did not see any.  (Doc. 28, Def.'s

MSJ, Ex. D, Kim Dep., at 46:19-47:11.)  Defendant submitted a photograph of the warning it

says was affixed to the bunk bed.  (Doc. 30, Def.'s Reply Br., Ex. C.)  In pertinent part, the

warning label states, "Never allow a child under 6 years of age on upper bunk."  (Id.)  It is

disputed whether "Defendant's management" at the front desk, knew that Borah was under the

age of six.  (Doc. 30, Def.'s Reply Br., at ¶ 6.)  Plaintiffs assert that the person at the front desk

did know the children's ages, because children under the age of three get in for free.  Great Wolf

Lodge asserts that it shows only that the person at the front desk knew Borah was over the age of

three, and that Leah was younger than the age of three.  At no time before or after the fall did

Plaintiffs complain to Defendant about the bunk beds or request a room with no bunk beds.

(Doc. 28, Def.'s MSJ, Ex. C, Yun Dep., at 41:24-42:4.)

On November 24, 2014, this case was transferred from the District of New Jersey to the

Middle District of Pennsylvania.  (Doc. 12.)  The parties conducted discovery, and on August 10,

2015, Defendant Great Wolf Lodge filed a Motion for Summary Judgment (Doc. 28).  The

parties have fully briefed the motion, and it is ripe for disposition.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of

law." FED. R. CIV. P. 56(c).  An issue is "genuine" if there is sufficient evidence with which a

reasonable jury could find for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986); Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988) (citing Anderson, 477

U.S. at 248).  A factual dispute is "material" if it might affect the outcome of the case.

Anderson, 477 U.S. at 248.  In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the non-moving party.  Skerski v. Time Warner Cable Co., 257 F.3d 273, 278 (3d Cir. 2001); White v. Westinghouse Elec, Co., 862 F.2d 56, 59 (3d Cir. 1988).

A party seeking summary judgment always bears the initial burden of informing the court of the basis of its motion and identifying those portions of the record that it believes demonstrates the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The non-moving party then has the burden to "come forth with 'affirmative evidence, beyond the allegations of the pleadings,' in support of its right to relief."  U.S. Bank, Nat'l Ass'n v. Greenfield, Civ. Action No. 1:12-CV-2125, 2014 WL 3908127, *2 (M.D. Pa. Aug. 11, 2014) (quoting Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004)). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," a court may grant summary judgment or consider the fact undisputed for purposes of the motion.  Fed. R. Civ. P. 56(e)(2-3).

### III. DISCUSSION

Plaintiffs raise claims of premises and product liability.  In its motion for summary judgment, Great Wolf Lodge argues that Plaintiffs cannot establish that it breached any duty owed to Plaintiffs, and that Plaintiffs cannot prevail on a design defect or failure to warn claim, because Great Wolf Lodge is not a designer, manufacturer, or seller of the bunk bed at issue.

Plaintiffs respond and argue that a question of fact exists as to the negligence of Defendant in upgrading Plaintiffs to a room with bunk beds.  Plaintiffs also assert that a question of fact exists as to whether Defendant failed to warn Plaintiffs that the bunk beds were not to be

used by children under six years old.  As to the design defect claims, Plaintiffs argue that

Defendant can be liable based on a negligence theory, because Defendant "decided to directly

expose the four year old minor plaintiff, and her two year old sister, to the enticement of the

instrument of her injuries."

In Pennsylvania, the elements of a negligence claim are:

(1) a duty or obligation recognized by the law requiring the defendant to conform to a certain standard of conduct for the protection of others against unreasonable risks;

(2) defendant's failure to conform to the standard required;

(3) a causal connection between the conduct and the resulting injury;

(4) actual loss or damage resulting to the plaintiff.

R.W. v. Manzek, 585 Pa. 335, 346 (2005).  The first element, whether defendant owes a duty of

care to the plaintiff, is a question of law.  The Court looks to Section 343 of the Restatement

(Second) of Torts, which has been adopted by Pennsylvania, to determine whether a duty existed.

Section 343 states,

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

Restatement (2d) of Torts § 343.  "A possessor of land is not liable to his invitees for physical

harm caused to them by any activity or condition on the land whose danger is known or obvious

to them, unless the possessor should anticipate the harm despite such knowledge or

obviousness." Restatement (2d) of Torts § 343A.

Great Wolf Lodge argues that summary judgment is appropriate, because Plaintiffs

cannot show that any dangerous condition existed on the premises, that any duty was breached by

Defendant, and that even assuming arguendo, that a dangerous condition existed and that a duty

was breached, Plaintiffs have insufficient evidence to establish that a breach was the legal cause

of Plaintiffs' damages.  In response, Plaintiffs argue that Great Wolf Lodge had a duty not to

upgrade them to a room with bunk beds, because the bunk beds were for children over the age of

six, and Borah and Leah Kim were ages four and two respectively.  Great Wolf Lodge asserts

that Plaintiffs have not presented any expert testimony that establishes that Great Wolf Lodge

had a duty to match the room with the age of the occupants.

Great Wolf Lodge points to two cases that would not consider a bunk bed a dangerous

condition.  In Rubin v. Olympic Resort, Inc., a six year old child allegedly fell out of a bunk bed

that had no guardrail.  Rubin v. Olympic Resort, Inc., 24 Misc. 2d 131, 131 (N.Y. Tr. Term,

1960).  The New York court found that the condition of a bunk bed without a guardrail was

obvious.  Id.  The Rubin court also stated, "It is for the parents of the child to determine what

equipment is necessary or suitable for their own children.  The hotelkeeper cannot be presumed

to know." Id. at 132.

In Buck ex rel. v. Camp Wilkes, Inc., a thirteen year old fell out of a bunk bed that had no

guardrails.  Buck ex rel. v. Camp Wilkes, Inc., 906 So. 2d 778 (Miss. Ct. App. 2004).  The Court

of Appeals of Mississippi, was not prepared to say that a bunk bed without guardrails, being used

by a thirteen-year-old, was a dangerous instrumentality.  Id. at 781.  The court also found that the

plaintiff had "failed to show any defect in the design of the bed or offered any evidence that the

6

bed failed to comply with applicable standards, regulations, or guidelines." <u>Id</u>.  The court also

found that a bunk bed is not a hidden or concealed peril.  <u>Id</u>. at 782.

Although <u>Rubin</u> and <u>Buck</u> are not controlling, we find them instructive and analogous to

the present case.  As evidenced by the deposition testimony of Borah's father, Mr. Kim, the risks

associated with a bunk bed were known and obvious.  When Mr. Kim was asked if he considered

having Borah sleep with her sister in the lower bed, he replied:

A. I think we thought about it.

Q.  And what did you think?

A.  Well, since it's a bunk bed, it could be dangerous.  So we did think maybe she
should sleep on the bottom bunk.

Q.  And why did you decide to let her sleep on the top bunk?

A.  So because we didn't think it was that dangerous, the – I didn't see a sign.  No
employee told us.  So we – and they just gave us the room, so we didn't think that
there was anything we had to worry about.  And we just thought naturally, because
there were two beds, we could have the older child sleep on the top and the smaller
one on the bottom and – because we didn't think it was so serious.  So –

THE INTERPRETER: The interpreter needs to clarify.

THE WITNESS: I didn't think it was that dangerous because I didn't think
she would fall off while sleeping.  And I didn't – I really didn't see the warning sign.

And I thought because the employees gave us this room that naturally it was
just for the older to sleep on the top and the younger on the bottom, and that's why
I didn't think it was that dangerous.

(<u>Id</u>., Ex. B, Kim Dep., at 58:16-60:4.)  When Ms. Yun was asked if at any point before Borah

fell, whether she questioned that it would be dangerous for Borah to sleep on the top bunk, she

replied,

A.  Because America is an advanced nation and there is a great concern for the safety

of children, and we thought Great Wolf Lodge had taken the necessary measures.

And, honestly, the guardrail was too low, and the bed was high.[1]

(Doc. 30, Def.'s Reply Br., Ex. B, Yun Dep., at 33:5-15.)

Borah's parents declared at their depositions, that Borah has never slept in a bunk bed,

and at home, she slept on the floor with her father or in a bed with rails.  When Ms. Yun was

asked if Borah has ever fallen out of bed, her response was:

A. No.  Because I put the – something to prevent her from falling.  On baby's beds.

Q. Rails?

A. Yes, bed rail.

Q. Were the rails that you used on a regular bed or in a crib?

A. Regular bed.

(Doc. 29, Pl.'s Br., Ex. A, Yun Dep., 26:4-13.)  Additionally, Mr. Kim testified that Borah

normally does not even sleep in a bed, she sleeps on the floor with him.

Q.  Have you always slept with Borah on the floor?

A.  Yes, and now we keep sleeping like that.  And sometimes when she wants to sleep with her mom, that's when we push her more towards the corner.

Q.  Is the adult bed up against a wall on one side?

A.  Both – so it's in a corner.  Two sides are facing the wall, the head side and one other side.

Doc. 28, Def.'s Br., Ex. D, Kim Dep., at 34:10-20.)

Plaintiffs have not come forward with evidence that the bunk bed was a dangerous

---

[1] Ms. Yun further testified that her opinion of the height differential of the guardrail and mattress was based on her husband's opinion after Borah fell.  Plaintiffs present no evidence that the height of the guardrail was lower than the applicable standards.

condition.  Furthermore, Plaintiffs do not come forward with any affirmative evidence beyond the pleadings, that a duty to provide Plaintiffs with a room with no bunk beds, existed.  We also find that, like the court in <u>Buck</u>, Plaintiffs have failed to show that the bed failed to comply with applicable standards, regulations, or guidelines.

Great Wolf Lodge provided an expert report from Keith A. Bergman, P.E., from Bergman Engineering.  (Doc. 30, Def.'s Reply Br., Ex. E, Expert Rpt.)  Mr. Bergman opined that Great Wolf Lodge did not cause the incident to occur, and that the bunk beds, as purchased and installed by Great Wolf Lodge, "met (or exceeded) the requirements of both the U.S. Consumer Product Safety Commission and ASTM International."  (<u>Id</u>. at 9.)  Mr. Bergman also opined that Great Wolf Lodge did not violate the codes, regulations and practices with regard to the bunk beds, and that the actions/inactions of Su Hyon Yun and Kwang Ho Kim caused the incident to occur as Borah could have not slept in the top bunk, and the top bunk was not used in accordance to the warning provided.  (<u>Id</u>.)

We view the evidence in the light most favorable to the non-moving party, but in response to a summary judgment motion, the non-moving party must come forward with affirmative evidence supporting the allegations.  We find that Plaintiffs have not done so, and that Defendant is entitled to judgment as a matter of law as to the premises liability claim.

For their design defect claim, Plaintiffs assert an attractive nuisance theory.  In response to Defendant's motion for summary judgment, Plaintiffs only argument as to the design defect claim was that Great Wolf Lodge "decided to directly expose the four year old minor plaintiff, and her two year old sister, to the enticement of the instrument of her injuries."  (Doc. 29, Pls' Br., at 8.)  As Great Wolf Lodge points out, the Supreme Court of Pennsylvania in <u>Martinelli v.</u>

<u>Peters</u> stated, "The old attractive nuisance doctrine has been supplanted by the more modern statement of law in Section 339, Restatement, Torts." <u>Martinelli v. Peters</u>, 198 A.2d 530, 530 n.1 (Pa. 1964).  Section 339 applies to "young children trespassing," and not invitees. Restatement (Second) of Torts § 339.

We agree with Great Wolf Lodge.  Section 339 applies to trespassing children, and not invitees; therefore, the attractive nuisance theory is unavailable in the present case.  We also find that Plaintiffs have not come forth with any affirmative evidence with respect to their design defect claim, as is required by the non-moving party.  We find that there are no genuine issues of material fact as to Plaintiffs' design defect claims and that Great Wolf Lodge is entitled to judgment as a matter of law.

## IV.  CONCLUSION

For the reasons set forth above, we will grant Great Wolf Lodge's motion for summary judgment.  An appropriate order is attached.